**In re M.L.R.**

[Cite as *In re M.L.R.*, 150 Ohio App.3d 39, 2002-Ohio-5958.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80277.

Decided Oct. 31, 2002.

Kramer & Nierman and Colleen M. O'Toole, for appellant Father.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, for appellee Cuyahoga County Department of Children and Family Services.

Zandra Ross, for appellee Mother.

Carla Golubovic, for appellee Carla Golubovic, guardian ad litem.

---

KENNETH A. ROCCO, Presiding Judge.

{¶ 1}  Appellant father appeals from a common pleas court judgment awarding permanent custody of his son, M.L.R., to the Cuyahoga County Department of Children and Family Services ("CCDCFS").  He raises eight assignments of error.  First, he argues that the court plainly erred by not appointing substitute counsel for him and continuing the dispositional hearing.  Second, he claims that

the court erroneously allowed hearsay testimony at the adjudication hearing. Third, he claims that the court's finding of dependency and award of permanent custody to CCDCFS was not supported by sufficient evidence and was against the manifest weight of the evidence, and the court did not make the findings necessary to support its judgment. Fourth, appellant urges that it was plainly erroneous for different judges to decide the adjudication and disposition phases of the case. Fifth, appellant claims that he received ineffective assistance of counsel. Sixth, he asserts that the court plainly erred by failing to consider a motion for custody filed by another relative. Seventh, appellant claims that the court erred by failing to appoint counsel to represent the child. Finally, appellant argues that the court erred by not requiring CCDCFS to make reasonable efforts to reunify the child with appellant.

{¶ 2} We find the court erred by allowing appellant's attorney to withdraw at the outset of the dispositional hearing. Therefore, we reverse and remand for further proceedings.

### Procedural History

{¶ 3} M.L.R., the subject child, was born May 3, 2000. CCDCFS took emergency custody of him on May 9, 2000, and immediately filed a complaint alleging that the child was dependent. The court awarded temporary emergency custody of the child to CCDCFS in an order entered May 23, 2000, and appointed counsel to represent the mother. On July 5, 2000, the court continued the order of temporary custody and appointed counsel to represent appellant father as well. A case plan was filed July 13, 2000.

{¶ 4} An adjudication hearing was held on May 21, 2001. At the hearing, the court allowed the CCDCFS to orally amend its complaint. On May 24, 2001, the court entered an order finding the child to be dependent by clear and convincing evidence. The court further allowed the mother's counsel to withdraw. The temporary emergency custody order was continued, and the matter was continued for disposition.

{¶ 5} A dispositional hearing was held on July 23, 2001. An entry journalized August 27, 2001, noted that neither the mother nor the father was present when the hearing was scheduled to begin at 9:00 a.m.; the court began proceedings at 9:45 a.m. without them. Appellant's counsel told the court that he had had no contact with appellant since the adjudication hearing and appellant was not available or cooperative and therefore requested permission to withdraw, which the court granted. CCDCFS proceeded ex parte to present the testimony of the social worker assigned to the case.

{¶ 6} When appellant appeared, the court advised him that his attorney had been allowed to withdraw "because you have failed to contact him in the mean

time." Appellant indicated that he had contacted the attorney several times, and the court responded, "You may be seated, and we'll see what happens."

{¶ 7} The child's foster mother then testified, and CCDCFS rested its case. The court called upon appellant and the child's mother to present their cases. The court specifically told appellant:

{¶ 8} "* * * Your lawyer was discharged this morning, and he was here at 8:30 trying to get out early, trying to get the case started so he could move on to the next case. And we didn't dismiss him until 9:45. We waited that long.

{¶ 9} "Now, you are without counsel. You may act as your own counsel."

{¶ 10} The mother asked the court whether they had a right to be assigned new counsel. The court told her, "No, ma'am." Appellant and the mother then testified. The court subsequently awarded permanent custody of the child to CCDCFS.

## Law and Analysis

{¶ 11} Appellant's first assignment of error contends that the court plainly erred by not appointing new counsel to represent him after it allowed his attorney to withdraw. This case concerns the termination of appellant's parental rights, "the family law equivalent of the death penalty." *In re Hitchcock* (1996), 120 Ohio App.3d 88, 101, 696 N.E.2d 1090. A parent's fundamental interest in his or her family relationships "undeniably warrants * * * [constitutional] protection." *Lassiter v. Dept. of Soc. Serv.* (1981), 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640. Parental rights receive even more stringent protection under Ohio law than the Constitution requires. *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 46, 693 N.E.2d 794.

{¶ 12} To this end, R.C. 2151.352 provides that parents are entitled to representation by legal counsel at all stages of the proceedings under R.C. Chapter 2151, including permanent custody proceedings. Furthermore, parents are entitled to have counsel appointed if they are indigent and unable to employ an attorney. Juv.R. 4(A) also recognizes parents' right to appointed counsel, if indigent.

{¶ 13} An attorney may withdraw from representation "only with the consent of the court upon good cause shown." Juv.R. 4(F). Under the local rules of the juvenile court, "[n]o attorney of record will be allowed to withdraw nor may he be discharged after fourteen (14) days prior to the trial date except for good cause shown that such action is not the fault of the party and is not for the purpose of delay." Loc.R. 7 of the Cuyahoga County Court of Common Pleas, Juvenile Division. From an ethical perspective, a lawyer may not withdraw from employ-

ment until the attorney has taken "reasonable steps to avoid foreseeable prejudice to the rights of his client." DR 2–110(A)(2).

{¶ 14} The juvenile court plainly erred by allowing appellant's attorney to withdraw on the morning of the dispositional hearing, without prior notice to his client. As the basis for his motion to withdraw, the attorney stated simply that "[he] had no contact with [his] client" since the adjudication hearing and "[his] client has not been available or cooperative," without further explanation. Counsel also did not explain why he did not move to withdraw from his representation of appellant at the earlier time required by local rules. The court did not inquire about any of these matters.

{¶ 15} This is not a case in which appellant can be deemed to have waived his right to counsel. First, there is no evidence that appellant asked his attorney to withdraw. Second, appellant demonstrably participated in the proceedings. He appeared at all of the prior hearings with his attorney. Although he was late for the dispositional hearing, he appeared for that as well. One instance of tardiness for a hearing cannot be deemed a waiver of the right to counsel. Cf. *In re Zhang* (1999), 135 Ohio App.3d 350, 354–355, 734 N.E.2d 379; *In re Trevor W.* (Nov. 30, 2001), Lucas App. No. L–01–1371, 2001 WL 1518066.

{¶ 16} Based only on counsel's assertion that appellant was uncooperative, the court could not assess whether it was appropriate to allow counsel to withdraw and, if so, whether to appoint new counsel. An attorney may ethically withdraw when his or her client "[b]y other conduct renders it unreasonably difficult for the lawyer to carry out his employment effectively." DR 2–110(C)(1)(d). Before the court can decide whether alleged uncooperativeness has made it unreasonably difficult for an attorney to represent the client effectively, it must ascertain the source of the uncooperativeness.

{¶ 17} For example, by lack of cooperation, the attorney may actually mean lack of communication. This appears to be the case here, given counsel's assertion that he had not been in contact with his client since the adjudication hearing. However, communication is a two-way street. An attorney's assertion that his or her client has not contacted the attorney does not demonstrate that the client has been "uncooperative" unless the attorney has also affirmatively attempted to contact the client and has been unable to reach him or her. If neither counsel nor the client has attempted to contact each other, they have simply not communicated; it cannot be said that the client has made it unreasonably difficult for the lawyer to represent him.

{¶ 18} Alternatively, lack of cooperation by a client may indicate that the client does not trust or have confidence in his or her lawyer. Mistrust may result from the client's misunderstanding of the attorney's role, which can be explained

and resolved. On the other hand, it may represent a breakdown in the attorney-client relationship that shows that the client is not receiving effective assistance, and new counsel should be appointed. *State v. Dukes* (1986), 34 Ohio App.3d 263, 265, 518 N.E.2d 28; *State v. Pruitt* (1984), 18 Ohio App.3d 50, 56, 18 OBR 163, 480 N.E.2d 499.

{¶ 19} A perceived lack of cooperation may also result from the client's inability to articulate his or her wishes, whether because of mental or physical incapacity, lack of education, or otherwise. Obviously, allowing counsel to withdraw and appointing new counsel will not improve this situation. Attorneys representing such clients must simply be prepared for difficulty in communication; "protecting [the client's] due process rights through the challenging of improper evidence often is as much as counsel can do in such cases." *In re Zhang* (1999), 135 Ohio App.3d 350, 364, 734 N.E.2d 379 (Rocco, J., dissenting).

{¶ 20} This is not meant to be an exhaustive list of the reasons why an attorney might consider a client to be "uncooperative." Rather, it is intended to show that the simple assertion that a party has been "uncooperative" is insufficient to demonstrate that the attorney should be allowed to withdraw, especially on the day of the dispositive hearing.

{¶ 21} The court here did not take any action to prevent prejudice to appellant as a result of his attorney's withdrawal. Appellant did not choose for his attorney to withdraw. He was not even present when the attorney asked for and was given leave to withdraw. Therefore, the court had a special obligation to protect appellant's rights. Yet the court did not even consider appointing new counsel or continuing the hearing. Instead, it allowed the dispositional hearing to go forward, ex parte, until appellant arrived. Although appellant had no notice that his attorney had withdrawn, the court required him to proceed immediately, without counsel. The court made it abundantly clear that it was requiring appellant and the child's mother to proceed without counsel, so a request for appointment of new counsel would have been futile.

{¶ 22} Appellant had the right to counsel at all stages of the proceedings, and never waived that right. To allow counsel to withdraw from representation on the day of the dispositional hearing, in his client's absence, without prior motion or notice to his client, without a demonstration to the court that the client had rendered it unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing, and to require the client to proceed immediately without representation, was both erroneous and prejudicial. Therefore, we sustain the first assignment of error.

{¶ 23} Our resolution of the first assignment of error has rendered moot all of appellant's other arguments relating to the dispositional hearing. We do

not have jurisdiction to address the assignments of error which challenge the adjudication of dependency. *In re Michael A.* (Mar. 21, 2002), Cuyahoga App. No. 79835, 2002 WL 441590.

{¶ 24} Accordingly, we reverse the order awarding permanent custody of M.L.R. to CCDCFS, reinstate the previous order placing the child in the temporary custody of CCDCFS, and remand for further proceedings.

Judgment reversed
and cause remanded.

ANNE L. KILBANE and DIANE KARPINSKI, JJ., concur.