{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of Melissa G. and appellant Fred G., the natural parents of Rachal G. and Renee G., both born on January 13, 1989, and granted permanent custody to appellee, Lucas County Children Services ("LCCS").
 {¶ 2} On July 26, 2001, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing in the court below. The complaint alleged that the twins, Rachal and Renee, were dependent and neglected in that their parents, Fred G. and Melissa G., regularly used "crack" cocaine in their presence and allowed two men who also used drugs to live in the family home. The complaint further alleged that the children had previously been removed from the family home by protective services in Hancock County and that the twins' older brother Shawn[1]
was living with a friend in Rising Sun, Ohio, doing roofing and painting. Shawn was on probation for underage consumption and unruly behavior. The complaint asked the court to award custody of the children to their maternal aunt Wanda H., or temporary custody to LCCS. After a shelter care hearing, Fred and Melissa G. agreed that temporary custody of the children should be awarded to Wanda H. The court further appointed separate counsel for Fred and Melissa G. and set the matter for an adjudication hearing.
 {¶ 3} On September 4, 2001, LCCS filed an original case plan in the court below. The goal of the plan was to return the children to their parents. To achieve that goal, the plan provided, in part, that Fred and Melissa were to refrain from the use and sale of cocaine or other legal or illegal drugs, were to complete a drug and alcohol assessment, were to participate in and follow all recommendations of the assessment and were to provide random urine drops. The case plan recognized that Fred's and Melissa's use of drugs had caused problems in every aspect of their lives and prevented them from providing their children with a safe and stable home environment. Accordingly, the services provided by the plan all focused on dealing with Fred's and Melissa's drug problems.
 {¶ 4} The case came before the lower court for an adjudication hearing on September 17, 2001. Subsequently, the court entered a judgment finding the children to be dependent and neglected and awarding temporary custody of Rachal and Renee to Wanda H. In findings of fact attached to the judgment entry, the court confirmed the allegations of the complaint.
 {¶ 5} On December 4, 2001, LCCS filed an administrative review with the court below. Although the review did not amend any part of the case plan, it did note that Fred and Melissa G. had made no progress on the case plan and noted that their drug screens had been positive and reflected high levels of cocaine use. The review also noted that Melissa G. was transient but that Fred G. remained in the family home. The review stated, however, that the parents had already been told that the family home was inappropriate because of its size and condition and because other people continued to live there.
 {¶ 6} On December 6, 2001, LCCS filed a motion to change disposition. LCCS sought temporary custody of Rachal and Renee so that it could pursue an award of permanent custody. In its motion, the agency indicated that Wanda H. and her husband wanted to adopt the girls and that Fred and Melissa G. were in agreement with the plan. In order to facilitate that adoption, LCCS would need to acquire temporary custody of the girls. Subsequently, LCCS filed an amended case plan with the lower court which changed the goal of the plan from reunification of the girls with their parents to the adoption of Rachal and Renee. The amendment noted that all parties were in agreement with the plan to petition the court for permanent custody of Rachal and Renee for purposes of adoption. At a hearing on March 14, 2002, Fred and Melissa G. stipulated to the change in disposition to allow LCCS to file for permanent custody. On March 18, 2002, LCCS filed its motion for a modification of the temporary custody of Rachal and Renee to an award of permanent custody pursuant to R.C. 2151.353(B) and 2151.414. In its motion, LCCS alleged that both Melissa and Fred G. had been referred to substance abuse treatment but had failed to follow through with services, had been ordered to submit to drug screening, the results of which had all been positive, had declined to participate in drug court, and had not participated in case plan services which would permit the children to be safely returned to them. The motion further alleged that Rachal and Renee had been placed in the care of relatives who had expressed an interest in adopting the girls. Finally, the motion alleged that an award of permanent custody would be in the girls' best interest and, therefore, it was in their best interest to permanently terminate the parental rights of Melissa and Fred G.
 {¶ 7} Melissa and Fred G. were subsequently served with notice to appear at a pretrial scheduled for May 29, 2002, regarding the motion for permanent custody. Neither parent appeared at that pretrial and only Melissa G. was represented by counsel. Thereafter, the matter proceeded to a dispositional hearing on August 26, 2002. Again, neither Melissa nor Fred G. appeared. Their separate counsel did, however, appear and, prior to proceeding with the hearing, both counsel sought leave to withdraw as counsel. Appellant's counsel stated that she had not heard from appellant since they were last in court. This statement apparently refers to the March 14, 2002 hearing as that was the last hearing at which appellant and his counsel appeared. Appellant's counsel stated that at that time, appellant was vacillating about his wishes with regard to the case. Appellant's counsel therefore did not know what appellant wanted her to do and asked that she be allowed to withdraw. The court granted both counsels' motions and then proceeded with the dispositional hearing without appointing new counsel for appellant or Melissa G.
 {¶ 8} On September 5, 2002, the trial court filed a judgment entry granting LCCS permanent custody of Rachal and Renee. The court specifically found that LCCS had made reasonable and diligent efforts, through the provision of case plan services, to prevent the continued removal of the children from their home but that these efforts were unsuccessful. In particular, the court determined that neither appellant nor Melissa G. participated in the case plan services, that both parents demonstrated a lack of commitment to the children by their failure to participate in case plan services, and that they had failed to remedy the conditions which caused the removal of the children from the home. In addition, the court noted that neither parent had maintained contact with the LCCS caseworker. The court therefore found pursuant to R.C.2151.414(B)(1) and (E)(1) and (4) that Rachal and Renee cannot or should not be placed with either parent within a reasonable time and that pursuant to R.C. 2141.414(D) an award of permanent custody to LCCS was in the girls' best interest.
 {¶ 9} Appellant now appeals this judgment, raising the following assignment of error:
 {¶ 10} "The trial court committed error by permitting appellant's attorney to withdraw from representing him on the day of the trial, in violation of Juv.R. 4, O.R.C. 2151.352 and LCJC. R. 7.2."
 {¶ 11} Appellant asserts that the above cited rules and statute entitled him to be represented by counsel at the dispositional hearing and that the trial court violated his right to due process by allowing his court appointed counsel to withdraw from the case on the day of the hearing.
 {¶ 12} Because a parent facing the termination of parental rights has been equated with a criminal facing the death penalty, Ohio courts are unanimous in requiring that great care be taken to ensure that due process is afforded parents in parental termination proceedings. In theMatter of: Adam M. (Aug. 20, 1999), Lucas App. Nos. L-97-1207 and L-98-1379. R.C. 2151.352, Juv.R. 4 and L.C.J.C. Rule 7.2 expand a parent's due process right to counsel during a termination of parental rights proceeding. State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44,46. R.C. 2151.352 reads in relevant part: "A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him pursuant to Chapter 120 of the Revised Code." Similarly, Juv.R. 4 provides: "(A) Assistance of counsel. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. *** (F) Withdrawal of counsel or guardian adlitem. An attorney or guardian ad litem may withdraw only with the consent of the court upon good cause shown." Finally L.C.J.C. Rule 7.2 expands upon Juv.R. 4(F) and reads: "No attorney of record will be allowed to withdraw nor may he/she be discharged within fourteen (14) days of the trial date except for good cause shown and provided that such action is not the fault of the attorney and is not for the purpose of delay."
 {¶ 13} Despite the provision of these rights, Ohio courts have also recognized that a parent facing the termination of his or her parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding. In the Matter of: James[B.] (Mar. 4, 1996), Stark App. No. 1995 CA 00070.
 {¶ 14} In cases in which a parent has communicated with the trial court or with counsel to explain a problem attending a scheduled hearing, Ohio courts have recognized that the failure of a trial court to take extra care to ensure the parent's presence is an abuse of discretion. See In the Matter of: Veronica [D.] (Mar. 31, 2000), Ashtabula App. No. 98-A-0054; In the Matter of: Lena [D.] (Dec. 12, 1997), Geauga App. No. 96-G-2020. Nevertheless, where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw. See In theMatter of Trevor W. (Nov. 30, 2001), Lucas App. No. L-01-1371; In theMatter of: James [B.], supra; In the Matter of: Robert [R.] (May 13, 1988), Lucas App. No. L-87-374; In re: Noah [P.] (July 9, 1980), Hamilton App. No. C-790539. To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case, including the background, experience and conduct of the parent. Inthe Matter of: Robert [R.], supra.
 {¶ 15} Appellant urges us to follow the holding in In the Matterof: M.L.R., 150 Ohio App.3d 39, 2002 Ohio 5958. In that case, the appellant father was appointed counsel in a parental termination proceeding. At the start of the dispositional hearing, appellant had not appeared. The court waited for 45 minutes. Appellant's counsel then moved to withdraw as counsel, stating that he had had no contact with appellant since the adjudication hearing and that appellant had not been available or cooperative. The court granted the request and proceeded with the hearing without appointing new counsel. While the hearing was still in progress, appellant appeared. The court explained that appellant's counsel had been permitted to withdraw because appellant had not contacted him and then told appellant that he would have to act as his own counsel. On appeal, the court held that the juvenile court plainly erred by allowing appellant's attorney to withdraw on the morning of the dispositional hearing. In particular, the court noted that there was no evidence that appellant had asked his counsel to withdraw and that appellant had demonstrably participated in the proceedings. The court then stated that "[o]ne instance of tardiness for a hearing cannot be deemed a waiver of the right to counsel." Id. at ¶ 15.
 {¶ 16} In the present case, appellant demonstrated a disinterest in the matter from the beginning. His filing of a notice of appeal is the first affirmative step he has taken to regain custody of his children since the complaint was filed. Although he did appear at hearings early on, he ultimately failed to cooperate with the court and made no other appearances in the case after the March 14, 2002 hearing at which he agreed that LCCS should seek permanent custody of the girls. We find this case to be more akin to the situation faced by the trial court in In theMatter of: Trevor W., supra. In that case the appellant mother failed to cooperate or communicate with her counsel or the court. The court granted counsel's motion to withdraw, recognizing that the attorney could not fulfill her obligation to advocate for her client if the client failed to cooperate. On appeal to this court we found no due process violation.
 {¶ 17} Given the circumstances of this case, we must conclude that appellant waived his right to counsel and that the trial court did not err in granting appellant's counsel's motion to withdraw. Accordingly, the sole assignment of error is not well-taken.
 {¶ 18} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs are assessed to appellant.
[1] During the trial court proceedings, Shawn turned eighteen years of age and, accordingly, the trial court lost jurisdiction over him. The judgment from which this appeal arises, therefore, only addresses the termination of appellant's parental rights to Rachal and Renee.