[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION JUDGMENT ENTRY
{¶ 1} This is an appeal from the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellant LaRosa M., the natural mother of Savanah M., and granted permanent custody of Savanah to appellee, Lucas County Children Services ("LCCS").
 {¶ 2} Savanah M. was born on August 9, 2002, eight weeks prematurely. At the time of Savanah's birth, LaRosa tested positive for marijuana but Savanah was too small to be tested for drugs. Savanah spent the following month in the hospital, during which time appellant visited her for a total of five hours. Also during that time LCCS was awarded emergency custody of Savanah. Upon her release from the hospital in September 2002, Savanah was placed in a foster home. Prior to Savanah's birth, temporary custody of her five siblings, ranging in age from two to ten years old, had also been awarded to LCCS under another case and those children were also living in foster homes.
 {¶ 3} Upon the filing of the case under which LCCS first obtained custody of Savanah, attorney Ann Baronas was appointed as counsel to represent appellant. That case, however, could not be completed within the time required by law, and on December 3, 2002, LCCS refiled the complaint in dependency and neglect, seeking permanent custody of Savanah. Attorney Baronas, who also represented appellant in the case involving Savanah's five siblings, was then reappointed to represent appellant in the current case. Prior to that time, LCCS had also filed for permanent custody of Savanah's siblings.
 {¶ 4} On December 5, 2002, appellant was personally served with a summons and complaint notifying her that LCCS was seeking permanent custody of Savanah. The summons also notified her of court proceedings scheduled for January 3 and January 28, 2003, and requested her appearance at those proceedings. The summons expressly stated: "IF THE PLEADING FILED IN THIS CASE CONTAINS A REQUEST FOR PERMANENT CUSTODY *** THE GRANTING OF PERMANENT CUSTODY BY THE COURT WOULD TAKE FROM THE PARENT(S) ALL PARENTAL RIGHTS, PRIVILEGES, AND OBLIGATIONS. *** Failure to appear in Court as directed may result in the loss of custody of the child(ren), and the issuance of any other orders that the Court finds appropriate."
 {¶ 5} At the January 2, 2003 pretrial, Attorney Baronas appeared on behalf of appellant but appellant failed to appear.
 {¶ 6} The case then proceeded to the adjudication and disposition trials on January 28, 2003. Again, appellant failed to appear. At the start of the adjudication proceeding, the following discussion between the court and appellant's counsel ensued:
 {¶ 7} "MS. BARONAS: Judge, the mother is not here. The last contact that I had with mother — face to face contact I should say was in October of 2002. This case is a refile. The last time this case had been filed we had a pretrial in October. She was present at that pretrial. Since then I have attempted to reach her by letter and by telephone at any and all addresses and phone numbers that I had to no avail. She is not present today. I understand from the bailiff that she was served with today's date.
 {¶ 8} "THE COURT: Did any mail that you sent to her return to you?
 {¶ 9} "MS. BARONAS: No, none of the mail was returned and the phone messages that I left on people's machines and nobody ever contacted me back one way or the other.
 {¶ 10} "THE COURT: So since the mail didn't return there is no guarantee that she got it, but if I understand the law, the presumption is that she got it.
 {¶ 11} "MS. BARONAS: Right. And I sent it to the last known address that she had given me in October.
 {¶ 12} "THE COURT: Okay. And basically you remain in this case kind of like a carry over from —
 {¶ 13} "MS. BARONAS: Yes, I was just reappointed when we needed to refile because of the time.
 {¶ 14} "THE COURT: Okay.
 {¶ 15} "MS. BARONAS: Since this case has been filed I have had no contact at all with her.
 {¶ 16} "THE COURT: Caseworker, I know you don't know for certain, but would you anticipate from your contact or lack of contact, whatever, would you anticipate that she would show up today or not? And I know it's just a guess on your part.
 {¶ 17} "MS. SILER: I would be very surprised to see her today.
 {¶ 18} "THE COURT: You would be surprised?
 {¶ 19} "MS. SILER: Yes.
 {¶ 20} "THE COURT: Okay. Ms Baronas, did you have a motion?
 {¶ 21} "MS. BARONAS: Your Honor, my motion would be to withdraw since I've had no contact with my client for several months, and I have no indication as to what her wishes are with regard to this particular case.
 {¶ 22} "THE COURT: Guardian ad litem, any recent contact either by the phone or in person?
 {¶ 23} "MS. AMSTUTZ: No.
 {¶ 24} "THE COURT: So you would kind of expect her not to show up either?
 {¶ 25} "MS. AMSTUTZ: Correct.
 {¶ 26} "THE COURT: Okay. Ms. Baronas, please do not stay by the phone, but I ask that if you leave your office, please leave where you are going to be in the event she shows up so we can get a hold of you. So Ms. Baronas is granted leave to withdraw as counsel with that admonition."
 {¶ 27} The court then proceeded with the adjudication and disposition proceedings without appointing new counsel to represent appellant. At the conclusion of the adjudication proceeding, the court found that Savanah was dependent and neglected. The court based this finding on the testimony of Sue Wilinsky, an employee of Centralized Drug Testing, Nancy Bain, a certified chemical dependency counselor with LCCS, Kathryn Tissue, a masters degree candidate in psychology and an intern at Unison Behavioral Health, Jim Thompson, a supervisor of parent education group sessions at the Friendly Center, Melissa Coburn, appellant's LCCS caseworker from June 2001 until April 2002, and Rose Siler, appellant's LCCS caseworker from April 2002 until the time of the trial below. At the conclusion of the disposition proceeding, the court concluded that LCCS had met its burden of proof, that LCCS had made reasonable efforts to finalize a permanency plan, and that LCCS had made reasonable efforts to reunify Savanah with her family. The court then found by clear and convincing evidence that despite reasonable efforts to prevent the removal of Savanah from appellant, Savanah could not and should not be returned to appellant and it was in Savanah's best interest that LCCS be granted permanent custody of her.
 {¶ 28} On March 26, 2003, the lower court filed a decision and judgment entry which granted LCCS permanent custody of Savanah and terminated appellant's parental rights. As a preliminary matter, the court addressed the issue of Savanah's alleged father, Antonio "Shateek" W. The court noted that service was finally perfected on Antonio by publication and that despite such service, Antonio did not appear at any of the court proceedings. As to adjudication, the court made the following findings. Appellant has a history with LCCS in that Savanah's five siblings are in the temporary custody of LCCS as the result of another case. In that case, appellant had been offered services for several months but had not successfully completed them. Appellant was recommended for drug treatment which she did not complete and for mental health treatment which she had not attended. Appellant continues to be involved in the criminal justice system in that warrants have been issued for her arrest on allegations of violence and harassment against others. Appellant's last urine screen in late October 2002, was positive for cocaine, although she denies that she uses drugs. In addition, she tested positive for marijuana at Savanah's birth. Based on these findings, the court found that Savanah was a dependent and neglected child.
 {¶ 29} The court then stated its findings with regard to disposition. The court found that based upon the evidence presented, the requirements of R.C. 2151.414(D) and (E) had been met by clear and convincing evidence. The court specifically found that as to appellant, the evidence clearly and convincingly met the standards of R.C.2151.414(E)(1), (2), (4) and (14). As to the purported father of Savanah, the court found that the standards of R.C. 2151.414(E)(1), (4), (10) and (14) had been met by clear and convincing evidence and that pursuant to R.C. 2151.414(E)(16), there is no legally adjudicated father of Savanah. Accordingly, the court terminated appellant's parental rights to Savanah. It is from that judgment that appellant now appeals, raising the following assignment of error:
 {¶ 30} "The trial court erred in allowing appellant's court appointed attorney to withdraw prior to adjudication and disposition, thus denying appellant her statutory right to representation."
 {¶ 31} In her sole assignment of error, appellant asserts that the trial court erred in allowing her court appointed counsel to withdraw prior to the adjudication and disposition proceedings. By allowing the case to proceed without her counsel, appellant asserts that the court violated her right to due process.
 {¶ 32} Because a parent facing the termination of parental rights has been equated with a criminal facing the death penalty, Ohio courts are unanimous in requiring that great care be taken to ensure that due process is afforded parents in parental termination proceedings. In theMatter of: Adam M. (Aug. 20, 1999), Lucas App. Nos. L-97-1207 and L-98-1379. R.C. 2151.352, Juv.R. 4 and L.C.J.C. Rule 7.2 expand a parent's due process right to counsel during a termination of parental rights proceeding. State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44,46. R.C. 2151.352 reads in relevant part: "A child, his parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him pursuant to Chapter 120. of the Revised Code." Similarly, Juv.R. 4 provides: "(A) Assistance of counsel. Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. *** (F) Withdrawal of counsel orguardian ad litem. An attorney or guardian ad litem may withdraw only with the consent of the court upon good cause shown." Finally, L.C.J.C. Rule 7.2 expands upon Juv.R. 4(F) and reads: "No attorney of record will be allowed to withdraw nor may he/she be discharged within fourteen (14) days of the trial date except for good cause shown and provided that such action is not the fault of the attorney and is not for the purpose of delay."
 {¶ 33} Despite the provision of these rights, Ohio courts have also recognized that a parent facing the termination of his or her parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding. In the Matter of: James[B.] (Mar. 4, 1996), Stark App. No. 1995 CA 00070.
 {¶ 34} In cases in which a parent has communicated with the trial court or with counsel to explain a problem attending a scheduled hearing, Ohio courts have recognized that the failure of a trial court to take extra care to ensure the parent's presence is an abuse of discretion. See In the Matter of: Veronica [D.] (Mar. 31, 2000), Ashtabula App. No. 98-A-0054; In the Matter of: Lena [D.] (Dec. 12, 1997), Geauga App. No. 96-G-2020. Nevertheless, where a parent fails to maintain contact with counsel, fails to appear for scheduled hearings despite receiving notice of such, and fails to cooperate with counsel and the court, the court may infer that the parent has waived his or her right to counsel and may grant counsel's request to withdraw. See In theMatter of Trevor W. (Nov. 20, 2001), Lucas App. No. L-01-1371; In theMatter of: James [B.], supra; In the Matter of: Robert [R.] (May 13, 1988), Lucas App. No. L-87-374; and In re: Noah [P.] (July 9, 1980), Hamilton App. No. C-790539. To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case, including the background, experience and conduct of the parent. In the Matter of: Robert [P.], supra.
 {¶ 35} Appellant urges us to follow our previous decision in Inthe Matter of: Alyssa Nicole C., 153 Ohio App.3d 10, 2003-Ohio-2673, and that case's reliance on In re M.L.R., 150 Ohio App.3d 39,2002-Ohio-5958. In M.L.R., the appellant father was appointed counsel in a parental termination proceeding. At the start of the dispositional hearing, appellant had not appeared. The court waited for 45 minutes. Appellant's counsel then moved to withdraw as counsel, stating that he had had no contact with appellant since the adjudication hearing and that appellant had not been available or cooperative. The court granted the request and proceeded with the hearing without appointing new counsel. While the hearing was still in progress, appellant appeared. The court explained that appellant's counsel had been permitted to withdraw because appellant had not contacted him and then told appellant that he would have to act as his own counsel. On appeal, the court held that the juvenile court plainly erred by allowing appellant's attorney to withdraw on the morning of the dispositional hearing. In particular, the court noted that there was no evidence that appellant had asked his counsel to withdraw and that appellant had demonstrably participated in the proceedings. The court then stated that "[o]ne instance of tardiness for a hearing cannot be deemed a waiver of the right to counsel."
 {¶ 36} In Alyssa Nicole C., supra, we were faced with a situation in which the lower court granted appellant's trial counsel's motion to withdraw at the dispositional proceeding after counsel informed the court that appellant had not contacted him for more than six months and he had not been able to contact her. Quoting M.L.R., supra at ¶ 16, we noted that "[b]efore the court can decide whether alleged uncooperativeness has made it unreasonably difficult for an attorney to represent the client effectively, it must ascertain the source of the uncooperativeness." The record in Alyssa Nicole C. revealed that shortly after the court allowed counsel to withdraw, appellant's caseworker testified that she had spoken with appellant only two days prior to the dispositional hearing. Accordingly, we questioned the tenacity of counsel's attempted communication and concluded that appellant was denied her right to representation.
 {¶ 37} In the present case, the source of the uncooperativeness is clear. Appellant was personally served with notice of the scheduled hearings at her address of record. It is noteworthy that this address is the same address appellant listed when she filed a pro se notice of appeal. Accordingly, it is undisputed that she received notice of the scheduled hearings. Attorney Baronas stated that she had made continued attempts to contact appellant by letter and telephone at her last known address to no avail and that no mail had been returned to her as undelivered. In addition, Rose Siler, the LCCS caseworker, stated that she would be very surprised to see appellant appear at the hearing. Subsequent evidence submitted at the hearings revealed that appellant had been disinterested in Savanah from the time of her birth, had been uncooperative with regard to case plan services, refused drug treatment, refused recommended psychiatric counseling, and failed to keep regularly scheduled meetings with her caseworkers.
 {¶ 38} We find this case to be more akin to the situation faced by the trial courts in In the Matter of: Trevor W., supra, and In the Matterof: Rachal G. and Renee G., 6th Dist. App. No. L-02-1306,2003-Ohio-1041. In Trevor W., the appellant mother failed to cooperate or communicate with her counsel or the court. The court granted counsel's motion to withdraw, recognizing that the attorney could not fulfill her obligation to advocate for her client if the client failed to cooperate. On appeal to this court we found no due process violation. Similarly, in Rachal G. and Renee G., the appellant father demonstrated a disinterest in the case from the beginning. Although he did appear at hearings early on, he ultimately failed to cooperate with the court and made no other appearances in the case after a hearing at which he agreed that the children services agency should seek permanent custody of his daughters. Indeed, his filing of a notice of appeal was the first affirmative step he took to regain custody of his children since the complaint was filed. On appeal, we concluded that appellant had waived his right to counsel and that the trial court did not err in granting appellant's counsel's motion to withdraw.
 {¶ 39} In the present case we similarly find that given the background, experience and conduct of appellant, the trial court did not err in determining that she waived her right to counsel and in granting counsel's motion to withdraw. The sole assignment of error is therefore not well-taken.
 {¶ 40} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
Knepper, J., concurs.
Singer, J., concurse and writes separately.