JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} On June 24, 2005, the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "Agency") filed a complaint alleging neglect and dependency and requesting temporary custody of J.Z. and J.C., the two minor children of M.Z. ("Mother").[1] At the time of the filing, Mother herself was in foster care and was represented both by a guardian ad litem ("GAL") and an attorney. On June 27, 2005, a juvenile magistrate appointed an attorney for Mother "pursuant to Ohio Rev. Code2151.352 and Rule 4(A) and 40(C)(3) of the Ohio Rules of Juvenile Procedure" and by judgment entry ordered that "the above-referenced attorney shall have the following powers, duties, and responsibilities: 1. To represent the client zealously within the bounds of the law which includes the Disciplinary Rules and Professional Regulations[.]"
 {¶ 2} A preliminary hearing was set for August 1, 2005. The docket reflects that Mother was sent notice of this hearing to a W. 95th Street address in Cleveland, Ohio. A notice of the proceeding was also sent to the Bureau of Indian Affairs in Washington D.C., as "[i]t [was] believed that the children are eligible for registration in the Choctaw Tribe[,]" pursuant to the Indian Child Welfare Act of 1978, 25 U.S.C. § 1911. The notice advised that the biological parents, the Indian Custodian, and the children's tribe had both the right to intervene in the within proceeding and the right *Page 4 
to transfer the proceeding to the tribe's jurisdiction. The notice further stated that "[n]o proceeding involving the above mentioned child shall take place until at least ten (10) days after receipt of this notice." This advisement from the court was also sent to Mother at a Nebraska Avenue address in Toledo, Ohio.
 {¶ 3} A hearing was held on August 24, 2005; Mother's attorney was present, Mother was not. The attorney made an oral motion to withdraw, and same was granted. The hearing proceeded in absence of Mother, her GAL, and her counsel. The children were adjudged neglected and dependent and disposition was set for September 14, 2005. The matter was continued once, and on September 23, 2005, with only the children's GAL, a social worker and a prosecutor present, the children were placed in the temporary custody of CCDCFS. There is no resolution upon the record of the issue regarding the children's believed Native American heritage.
 {¶ 4} On March 27, 2006, the State moved for permanent custody of both of the children. On June 27, 2006, the same attorney who previously withdrew from the representation of Mother orally on the day of final disposition of the temporary custody issue, was reappointed, and again ordered by judgment entry to "represent the client zealously within the bounds of the law which includes the Disciplinary Rules and Professional Regulations." Both Mother and Father were present, and gave the court their phone number in Toledo, Ohio. The matter was set, on the record, for preliminary hearing for August 2, 2006 at 1:00 p.m. The record reflects *Page 5 
that the matter was then continued until September 21, 2006 at 1:30 p.m. The record reflects that Mother was not successfully notified of the new date.
 {¶ 5} On the date of final hearing, the only persons present were the assistant county prosecutor, the children's GAL and a social worker. Mother's attorney appeared, and again orally requested to withdraw. In her oral motion, she alleged that in the previous temporary custody case, she had written Mother a letter, and that Mother had failed to respond. She did not reference any attempt to contact Mother in the permanent custody case at issue here. She did state, however, that Mother had never contacted her. With no further information than that, the court permitted counsel to withdraw. As in the temporary custody matter the previous year, the hearing proceeded, permanent custody was placed in the Agency, and both Mother and Father's parental rights were terminated. It is from that order that Mother appeals.
 {¶ 6} Mother asserts six assignments of error; we address only the fourth assignment, as it is dispositive. In that assignment of error, Mother alleges that "[She] was denied of her right to effective assistance of counsel when her attorney was permitted to withdraw from representation."
 {¶ 7} It seems that every brief involving an appeal of an order of permanent custody, and every decision analyzing alleged error in those appeals, begins with the observation noted by this court that: *Page 6 
 {¶ 8} "[t]his case concerns the termination of appellant's parental rights, `the family law equivalent of the death penalty.' In reHitchcock (1996), 120 Ohio App.3d 88, 696 N.E.2d 1090. A parent's fundamental interest in his or her family relationships `undeniably warrants * * * [constitutional] protection.' Lassiter v. Dept of SocialServ. (1981), 452 U.S. 18, 27, 68 L.Ed.2d 640, 101 S.Ct. 2153. Parental rights receive even more stringent protection under Ohio law than the constitution requires. State ex rel. Asberry v. Payne (1998),82 Ohio St.3d 44, 46, 693 N.E.2d 794." In the Matter of: M.L.R.,150 Ohio App.3d 39, 2002-Ohio-5958, 779 N.E.2d 772.
 {¶ 9} The facts in this matter are identical to those inM.L.R. In M.L.R., the father's counsel was granted permission to withdraw on the morning of a dispositional hearing, based upon an oral motion made without prior notice to the client, in the client's absence, without any demonstration that the client had rendered it unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing. The obvious result of that hearing was an order of custody to the Agency and a termination of the father's parental rights. This court vacated those orders, and the cause was remanded to the juvenile court for further proceedings. This court found that "[a]ppellant had the right to counsel at all stages of the proceedings, and never waived that right." Id. at 44. This court therefore held that: *Page 7 
 {¶ 10} "[t]o allow counsel to withdraw from representation on the day of the dispositional hearing, in his client's absence, without prior motion or notice to his client, without a demonstration to the court that the client had rendered it unreasonably difficult for the attorney to represent him, and without appointing new counsel and/or continuing the hearing, * * * was both erroneous and prejudicial." Id.
 {¶ 11} Mother advances two additional arguments as to her allegation that it was error to permit counsel to withdraw upon oral motion the day of the hearing without notice to her, and in her absence. The first argument is based on Loc.R. 7 of the Court of Common Pleas of Cuyahoga County, Juvenile Division, which states that "[n]o attorney of record will be allowed to be discharged after fourteen (14) days prior to the trial date except for good cause shown that such action is not the fault of the party and is not for the purpose of delay." Absence of a client who has not been successfully advised by the court of the hearing date, and never advised by her counsel of the hearing date, could hardly be construed as "the fault of the party."
 {¶ 12} Counsel for Mother likewise directs us to DR 2-110(A)(2), which states in pertinent part:
 {¶ 13} "* * * [a] lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her client, including giving due notice to his or her client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules." *Page 8 
 {¶ 14} The record reflects that none of this was done. While the State argues that counsel had the right to request to withdraw under DR 2-110(C)(1)(d) (i.e., the client, by other conduct, renders it unreasonably difficult for the lawyer to carry out his or her employment effectively),[2] the right to withdraw is only predicate to the manner of withdrawal, i.e., only if counsel had a right to withdraw, do the means and manner of withdrawal become an issue. We do not determine here whether counsel had the right to withdraw; however, we are clear that the manner of her withdrawal was not in accordance with the disciplinary rules.
 {¶ 15} While not holding in all cases that a withdrawal of counsel in a manner not in accord with the Disciplinary Rules should result in reversal, we do note that the order appointing counsel specifically stated that counsel was to represent her client "zealously within the bounds of the law which includes the Disciplinary Rules and Professional Regulations[.]" Counsel's manner of withdrawal herein was not consistent with the dictates of the Disciplinary Rules.
 {¶ 16} Finally, the State contends that, notwithstanding counsel's withdrawal, the burden is upon Mother to show prejudice, and she has not done so. It would be charitable to cast that position as disingenuous. The record is devoid of cross-examination *Page 9 
of the social worker[3] and the GAL.[4] And it goes without saying, that with no one to represent her at the hearing, there was no one to present evidence on her behalf.
 {¶ 17} We cannot continue to incant that a termination of parental rights is the civil equivalent of the death penalty, that the right is so paramount that it deserves constitutional protection, and that the right is so substantial that Ohio law provides more protection than even that of the constitution, and then permit termination of parental rights to occur in the absence of actual notice to the parent, or at least some substantial attempt to provide actual notice to the parent, at a "hearing" where counsel has orally withdrawn with no actual or even attempted notice to the parent of her withdrawal, upon factors such as those summarized in footnotes 2 and 3.
 {¶ 18} The remaining assignments of error concern the evidence produced by the State in support of its request for permanent custody. Because we find that the trial court erred in proceeding with the dispositional hearing, the remaining *Page 10 
assignments of error are moot and we decline to address them pursuant to App.R. 12(A)(1)(c).
Reversed and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS
ANTHONY O. CALABRESE, JR., P.J., DISSENTS WITH OPINION
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.
[2] We do not decide here whether the client has an obligation to contact the attorney when she had received no communication from the attorney, and/or when her address and telephone number may have changed.
[3] Whose testimony in support of permanent custody she summed up as "I do believe that M.Z. cares for her kids, but the maturity level mentally and financially, I just really feel that she does not have the means to do so. I don't feel that she's a stable person at all."
[4] Whose entire testimony in support of permanent custody consisted of "[t]he mother * * * was in permanent custody of the agency being part of a very vile family. From which she, of course, learned no parenting skills of her own and probably never will. * * * The children are being very well taken care of in this foster home here in Cleveland. * * * After the agency giving mom a chance, she had them for over a year, well over a year and she just has no ability to parent because nobody ever parented her really either. * * * So it would certainly be in the children's best interest that permanent custody be granted and give these children an opportunity to live a different life than their mother did."