[Cite as *In re K.J.*, 2026-Ohio-2161.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re K.J.                                    Court of Appeals No.  {48}L-25-00314

                                              Trial Court No.  24302843

                                              **DECISION AND JUDGMENT**

                                              Decided:  June 9, 2026

* * * * *

Janna E. Waltz, for appellee.

Dan M. Weiss, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, S.L, the mother of K.J., from the December

30, 2025 judgment of the Lucas County Court of Common Pleas, Juvenile Division,

granting permanent custody of K.J. to appellee, Lucas County Children's Services

("LCCS" or "the agency").   For the reasons that follow, we affirm the judgment.

{¶ 2} Mother sets forth one assignment of error:

The Juvenile Court committed reversible error by proceeding with the
permanent custody hearing without determining that [mother] had
intentionally, knowingly, intelligently, and voluntarily waived [her] right to
counsel.

## Background

{¶ 3} K.J. was born in December 2014 to mother and T.J., father. Mother and father were not married.

{¶ 4} In October 2024, the agency became involved with the family when father, the custodial parent of K.J., failed to pick up K.J. from school. Eventually the school made contact with father's girlfriend, and she agreed to pick up K.J., but requested police presence due to domestic violence ("DV") concerns between her and father.

{¶ 5} On November 26, 2024, a complaint in dependency and neglect was filed in juvenile court due to concerns with mother and father's mental health, substance use, DV and previous involvement with children services in Michigan. That same day, an emergency shelter care hearing was held. Neither mother nor father attended the hearing, as mother was in jail and father was out of town. Interim temporary custody of K.J. was awarded to the agency. K.J. was placed in a foster home.

{¶ 6} On December 19, 2024, LCCS filed a case plan with the court. On March 11, 2025, the court adopted the case plan as its order.

{¶ 7} On February 25, 2025, an adjudicatory hearing was held, which mother attended. Mother waived her right to a hearing and agreed to a finding of dependency and neglect. Mother, via counsel, requested that the dispositional hearing be held at a later date.

2.

**{¶ 8}** On March 11, 2025, the dispositional hearing was held; mother was not present. Mother's counsel represented the following to the magistrate:

> Your Honor . . . [mother] has not appeared here today. I did have a chance to speak with her at our last court date when she had asked me to set the disposition out. Since that time, despite my attempt to reach her, I have been unable to reach her, so I'm not sure why she's not here today. I do know she did meet with the [GAL] shortly after our last hearing, but at this time I'd ask the court to waive my appearance. I don't think it prejudices [mother] in that there is a case plan with a goal of reunification. At this time there's services offered to my client, she definitely knows who her caseworker is because she's met with her. She's met with the [GAL]. And it's my understanding that my client has not had contact with this child in a number of years. So I know she is interested in reunifying with the child, but I can't tell the court why she's not here. . . [Mother] directed me to bifurcate, Your Honor, and after that time she did not make our meeting that we had scheduled or contact meeting and she does have my contact information because she' s used it. . . . [p]rior to the last hearing.

**{¶ 9}** The magistrate waived counsel's appearance at the hearing. The hearing proceeded. The agency caseworker testified, inter alia, that K.J. was linked with a therapist and made some progress. K.J. "has a very difficult time with building relationships with people and trusting due to him living so many different places with father and then also losing contact with those people. He ha[s] felt very abandoned. So right now one of the only people he really trusts is foster mom." K.J. last had contact with mother in 2019. The agency was working with K.J. to develop a visitation plan between him and mother, and K.J. has worked with his therapist to develop a plan to start phone calls with mother, and if K.J. was comfortable with calls, he could move to Zoom chats, and then to in-person visits. However, there have been no phone calls between K.J. and mother because K.J. has had no interest.

3.

{¶ 10} At the conclusion of the hearing, the magistrate awarded temporary custody of K.J. to the agency.

{¶ 11} On September 12, 2025, the agency filed a motion for permanent custody.

{¶ 12} On October 23, 2025, a permanent custody pretrial was held before the juvenile court and neither father nor mother appeared. However, the court acknowledged that there was a service issue as to mother, as mother's certified mail was unclaimed.

{¶ 13} On December 10, 2025, the permanent custody trial was held. Neither father nor mother appeared. Prior to the start of trial, the following exchanges occurred between the court and father's counsel and the court and mother's counsel:

> THE COURT: Good morning. We are here scheduled for trial in this matter. So we can start with you, [father's counsel], since you have a preliminary matter.
>
> [FATHER'S COUNSEL]: Yes, Your Honor. Thank you. I have had no contact with [father] and it is my belief I cannot have an effective presentation for his wishes as there has been no contact or any discussion as to his wishes in this matter, and it would be - I would therefore request to be relieved of my duty to [father] and withdraw from the case.
> . . .
>
> THE COURT: Thank you, [father's counsel], for your service thus far. We will let you be removed from the case.
> . . .
>
> [MOTHER'S COUNSEL]: Your Honor, I too am going to make a motion to withdraw. I have had contact with my client and at times it's been frequent. She does have my personal cellphone number. She has met with me. She has come to court in the past. Around September[,] she had sent me a new phone [number] and I had been trying to contact it to no avail. I have an address for her. I have written three letters in preparation for today's hearing, as well as text[ed] her and called her on the four numbers I have for her. I also reached out to the caseworker to see if there is any new contact information. She had the same numbers and address that I had. So

4.

as we sit here today[,] I don't know what her wishes are as far as this motion and I'm not sure how to proceed on her behalf. . . Since I've had no response back from either letter, text, or phone calls from her.

THE COURT: All right.  It is 9:44, the matter was scheduled for 9:30.  There is service.  So thank you.  I assume no objection?

[AGENCY'S STAFF ATTORNEY]: No objection.

[GAL]: No objection.

THE COURT: Thank you, [mother's counsel]. . .

{¶ 14} The permanent custody trial proceeded.

{¶ 15} On December 30, 2025, the juvenile court issued its judgment entry.  The court found that the parties were properly served and summoned.  The court further found that mother's counsel "has not had any recent contact with [mother] despite her best efforts to communicate with her, including placing phone calls to her last known telephone number and sending letters to her last known address," and that mother's failure to interact with her counsel made it "unreasonably difficult" for mother's counsel to continue her representation.  Therefore, the court granted mother's counsel's oral motion to withdraw.

{¶ 16} In addition, the court found, by clear and convincing evidence, after considering all admissible and relevant evidence, that K.J. "cannot be placed with his parents within a reasonable time or should not be placed with his parents, in accordance with R.C. 2151.414(B)(l)(a); and is abandoned, in accordance with R.C 2151.414(B)(l)(b)."  The court also found, "by clear and convincing evidence, that a grant

5.

of permanent custody to LCCS is in [K.J.]'s best interest, under R.C. 2151.414(D)." The court granted the agency's motion for permanent custody.

{¶ 17} Mother appealed. Father did not appeal and is not a party to this appeal.

**Assignment of Error**

{¶ 18} Mother argues the juvenile court erred by proceeding with the permanent custody hearing without determining that she had intentionally, knowingly, intelligently and voluntarily waived her right to counsel. Mother asserts the Supreme Court of Ohio, in *In re R.K.*, 2018-Ohio-23, held that a juvenile court may not infer that a parent has waived his or her right to counsel based on the parent's unexplained failure to appear at the permanent custody hearing.

{¶ 19} Mother asserts that the juvenile court "granted a withdraw[al] of counsel and made know [sic] finding that [mother] waived her right to counsel," but "[t]he record shows no valid waiver of [her] right to counsel." Mother cites to her counsel's explanation for moving to withdraw: "'I have had contact with my client and at times it has been frequent. She does have my personal cellphone number. She has met with me. She has come to court in the past[.]' . . . Critical to [mother's] position is counsel's statement to the court: 'I don't know what her wishes are as far as this motion and I'm not sure how to proceed on her behalf.'" Mother contends that her "[c]ounsel's statement highlights the absence of a valid waive[r] by [mother], as neither [c]ounsel nor the [c]ourt provided information to find that [mother] intentionally, knowingly, and voluntarily waived her right to counsel."

6.

{¶ 20} Mother further argues that her "[c]ounsel could not state that [mother] knew she had a right to counsel, and if she knew she had a right to counsel that she intentionally relinquished and abandoned that right because she failed to appear on December 10, 2025." Mother insists that the record shows that she was at the juvenile court on October 23, 2025, and was served while at court. She claims "[t]he record does not reflect that [she] at any point made any statement that she wanted to waive her right to counsel nor that she had a sufficient understanding of the proceedings to intelligently, knowingly, and voluntarily waive her right to counsel."

**Law**

{¶ 21} In *In re R.K.*, the issue before the Supreme Court was whether the parent had waived her right to counsel when she did not appear at the final permanent custody hearing. *Id.* at ¶ 6. The Supreme Court cited and relied on *In re Sadie R.*, 2005-Ohio-325 (6th Dist.), where this court held that in order to protect the rights of a parent in the same type of situation, a juvenile court must make two inquiries before permitting a parent's attorney to withdraw. The two inquiries are:

> "First, the court must 'ascertain that counsel's attempts to communicate with and obtain the cooperation of the client were reasonable,' and '[s]econd, the court must verify that "the failure of this communication resulted in the inability of counsel to ascertain the client's wishes.'" [*In re Sadie R.*] at ¶ 36, quoting *In re Savannah M.*, . . . 2003-Ohio-5855, . . . ¶ 45 (6th Dist.) . . . (Singer, J., concurring)."

*In re R.K.* at ¶ 6.

7.

**{¶ 22}** The *In re R.K.* court determined that the juvenile court

> made no inquiries into [the parent's] whereabouts, why she was not present, the attorney's past attorney-client relationship with [the parent], or the substance of her response to the attorney's letter. Instead, the court simply granted the attorney's oral motion to immediately withdraw, apparently without giving any consideration to whether [the parent] had waived her right to counsel. The juvenile court's apparent stance was that a parent's failure to appear for a permanent-custody hearing automatically constitutes a waiver of that parent's right to counsel. We cannot condone that approach.

*Id.* at ¶ 7.

**{¶ 23}** In *In re O.M.S-W.*, 2020-Ohio-201, ¶ 3 (10th Dist.), the appellate court explained, in applying *In re R.K.*, that when a juvenile court is considering whether a parent has waived his or her right to counsel, it is essential for the juvenile court to engage in "real 'consideration' and 'discussion'" of the alleged waiver. *In re O.M.S-W.* at ¶ 3, quoting *In re R.K.* at ¶ 7. The appellate court further explained that "[t]he aim of that careful examination must be to determine whether the right to counsel has been waived voluntarily, knowingly, and intelligently." *In re O.M.S-W.* at ¶ 3. *See also In re Ja.S.*, 2023-Ohio-722 (10th Dist.) and *G.M. v. T.B.*, 2025-Ohio-5450 (6th Dist.).

## Analysis

**{¶ 24}** Based on mother's assigned error, the question before us is whether she waived her right to counsel when she did not attend the permanent custody trial. Thus, we will limit our discussion to this narrow issue.

**{¶ 25}** In order to protect mother's rights, the juvenile court was required to make two inquiries before allowing the mother's counsel to withdraw: (1) whether counsel's

8.

attempts to communicate with mother and obtain the cooperation of the client were reasonable, and (2) whether this failure to communicate resulted in counsel's inability to ascertain the client's wishes.

{¶ 26} A review of the record shows that although the juvenile court did not expressly examine mother's counsel, counsel volunteered the information necessary for the court to determine the answers to the two inquiries set forth in *In re R.K.*, in order to protect mother's rights.

{¶ 27} As to the first inquiry, mother's counsel detailed that she had had contact with mother - at times frequent contact. Counsel met with mother, mother had counsel's personal cellphone number, counsel had mother's address and mother was present in court in the past. Then, in September 2025, some months before the trial, mother sent counsel a new phone number, which counsel tried to use to contact mother, to no avail. Counsel wrote three letters to mother in preparation for trial, counsel texted and called mother on the four numbers that counsel had for mother; counsel received no reply from mother. In addition, counsel reached out to the caseworker for any new contact information for mother, but the caseworker had the same numbers and address that counsel had.

{¶ 28} As to the second inquiry, counsel declared that she was not sure how to proceed on mother's behalf given that counsel had no response back from the letter, text or phone calls.

9.

{¶ 29} The record further reveals that in the juvenile court's December 30, 2025 judgment entry, the court found that mother was properly served and summoned and that mother's counsel "has not had any recent contact with her client despite her best efforts to communicate with her" and that mother's failure to interact with counsel made it "unreasonably difficult" for counsel to continue to represent mother.

{¶ 30} We find that before the juvenile court granted counsel's request to withdraw, the court had information about counsel's past attorney-client relationship and previous contact with mother, as well as counsel's efforts to reach mother in the months prior to trial and mother's complete lack of communication with counsel during that time period. While the court did not inquire as to mother's whereabouts or why mother did not appear for trial, the record clearly shows that mother had had no interaction with her counsel for months, so it can be assumed that counsel would not possess the answers to these questions. Unlike *In re R.K.*, this is not a case where the juvenile court considered that mother's failure to attend the trial automatically constituted a waiver of mother's right to counsel.

{¶ 31} We therefore find that the juvenile court adequately protected mother's right to counsel, as the court determined that mother's counsel used her best efforts to attempt to communicate with mother and obtain mother's cooperation (which efforts we find to be more than reasonable), and mother's lack of contact with counsel resulted in counsel's inability to ascertain or know mother's wishes. Moreover, we find that the

10.

juvenile court complied with the mandates of *In re R.K.*, such that mother voluntarily, knowingly, and intelligently waived her right to counsel.

{¶ 32} Accordingly, mother's sole assignment of error is not well-taken.

## Conclusion

{¶ 33} The judgment of the Lucas County Common Pleas Court, Juvenile Division, is affirmed. Pursuant to App.R. 24, mother is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Christine E. Mayle, J.                                 _____

JUDGE

Myron C. Duhart, J.

Charles E. Sulek, J.                                _____

CONCUR.                                              JUDGE

_____

JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.