DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating the rights of the parents of three children and awarding permanent custody of the children to a children services board. Because we conclude that the trial court properly permitted appellant father's counsel to withdraw and that there was sufficient evidence to support the trial court's findings, we affirm.
{¶ 2} Appellants are Naomi L. and Ronnie M., parents of Isaac M., four; Sarina M., two; and Karisa M., one. Appellee is the Lucas County Children Services Board ("CSB").
{¶ 3} The parties first became involved with each other in 1999, shortly after Isaac's birth. At that point, appellee intervened because of domestic violence between Isaac's parents, coupled with concerns about appellant father's serious mental health, anger management and drug abuse problems. Appellant mother suffered with depression for which she was prescribed medication. Isaac is developmentally delayed. These conditions prompted appellee to remove Isaac from the home and initiate a dependency action for him.
{¶ 4} On June 28, 1999, Isaac was found to be a dependent child. Custody was awarded to appellee. Appellee arranged various services for both appellants and two months later Isaac's legal custody was returned to his mother with supervised visitation for appellant father.
{¶ 5} In 2001, appellee filed a dependency and neglect complaint for Isaac and his newborn sister, Sarina. The complaint alleged that appellee's agreement to return Isaac to his mother's custody in the first case was, in part, due to her assertion that her relationship with the mentally unstable and frequently violent father of the child was over. Appellant noted that once the custody of Isaac was returned to appellant mother, she stopped accepting the services appellee had arranged. Moreover, appellant father never participated in the services recommended for him. Appellee noted that even though at one point appellant mother had obtained a protective order against appellant father, by the time Sarina was born, appellant mother had moved to a home occupied by appellant father and his mother.
{¶ 6} Following a hearing, both children were adjudicated dependent. Temporary custody was awarded to appellee — placement with appellant mother. The court also approved a case plan designed to protect the children from future domestic violence, cope with the developmental delays in both children, manage appellant mother's depression, and help the family obtain stable housing.
{¶ 7} In 2002, at the annual case review, appellee moved to extend custody rather than return the children to their parents. Appellee's caseworker testified that, although appellant mother was participating in services, her progress was "slow." Appellant father was not participating in services, although he had been seeing the children during supervised visitations at CSB. The court granted appellee's motion to extend custody. When, a month after the annual review, Karisa was born, appellee added her to a separate dependency adjudication. Karisa's legal custody remained with appellant mother, with appellee assuming protective services.
{¶ 8} The birth of Karisa, and appellant mother's admission that Karisa's conception was the result of a concealed continuing relationship with appellant father, concerned appellee's caseworker. This, coupled with appellant mother's poor progress in parenting classes, failure to cooperate with extended care services for three "special needs" children and the discovery that appellant mother was now involved in yet another relationship marked by domestic violence, prompted appellee to seek permanent custody of Isaac and Sarina. A short time later, appellee made the same request for Karisa. The cases were consolidated and set for a permanent custody hearing in February 2003.
{¶ 9} Prior to the permanent custody hearing, appointed counsel for appellant father moved to withdraw, citing an almost total lack of communication with his client and an inability to ascertain his wishes. The trial court granted counsel's motion, then proceeded to trial on appellee's petition to terminate both appellants' parental rights.
{¶ 10} At trial, appellee's caseworker testified that the removal of the children from the home was the result of domestic violence, concern about the parents' mental stability and the parents' lack of adequate housing. The caseworker reported that appellant father had failed to engage in any services ordered for him. The caseworker also told of appellant mother's failure to fully participate in many of the services offered to her and her continued violent associations with appellant father and, subsequently, another man. Additional witnesses supported the caseworker's testimony concerning appellant mother. The manager of an apartment complex where appellant mother had lived until December 2002, testified to repeated violent incidents between appellant mother and her boyfriend while they lived there. Indeed, according to the apartment manager, appellant mother's lease was not renewed due to the continued violent and destructive behavior of the boyfriend.
{¶ 11} At the conclusion of the hearing, the trial court found that appellee had established by clear and convincing evidence that, pursuant to R.C. 2151.414(E)(1), appellants had failed to remedy the conditions which caused the children to be placed outside the home and, pursuant to R.C. 2151.414(E)(4), appellants had demonstrated a lack of commitment to the children. On these findings, the court determined that the children cannot be placed with either parent within a reasonable period of time and that it is in their best interests that permanent custody be awarded to appellee.
{¶ 12} From this judgment, appellants now bring this appeal.
{¶ 13} Appellant father sets forth the following two assignments of error:
{¶ 14} "A. The trial court committed reversible error when it failed to appoint a guardian ad litem for the appellant as mandated by the Ohio Revised Code Section 2151.281(C) and Juvenile Rule 4(B)(3).
{¶ 15} "B. The trial court committed reversible error by permitting appellant's counsel to withdraw at the dispositional hearing."
{¶ 16} Appointed counsel for appellee mother has filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, and Morris v. Lucas Cty. Children Serv. (1989), 49 Ohio App.3d 86, 87, in which she states that she has reviewed the record in this matter and has failed to ascertain any arguable issues for appeal. As a result, counsel seeks leave to withdraw. In compliance with Anders, counsel has filed a brief indicating potential, but in her estimation unarguable, assignments of error. Counsel has also submitted a copy of her brief to appellant mother and advised her of her right to submit her own brief in this matter. Appellant mother has failed to file her own brief.
{¶ 17} Appellant mother's counsel cites the following two potential issues:
{¶ 18} "1. Whether appellant's action triggered the standard of O.R.C. 2151.414(E), causing the court to award permanent custody of the children to Lucas County Children Services.
{¶ 19} "2. Whether the trial court found by clear and convincing evidence that permanent custody of the children should be awarded to Lucas County Children Services, pursuant to O.R.C. 2151.414(E)."
 Guardian ad litem
{¶ 20} R.C. 2151.281(C) provides, in material part, that:
{¶ 21} "(C) In any proceeding concerning an alleged or adjudicated * * * neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent."
{¶ 22} Juv.R. 4(B)(3) contains a similar directive.
{¶ 23} At the shelter care hearing for Isaac and Sarina, appellant father did not appear, but his mother did. Appellant father's mother advised the court that appellant father had a history of "mental problems." This information prompted an inquiry from the court:
{¶ 24} "Is he to the point where we need someone here who — to advocate on what's best for him? You said he didn't know what day it was or what time it was.
{¶ 25} "[Father's mother]: Well, he's not mentally like that. But he's went all through special-ed and, like if you ask him what today was, he would probably say Sunday. Or if you say what year is it, he wouldn't know the year.
{¶ 26} "The Court: Is he suffering from some kind of mental health illness?
{¶ 27} "[Father's mother]: He had seizures, epilepsy when he was younger and he's developmentally handicapped.
{¶ 28} "The Court: How bad?
{¶ 29} "[Father's mother]: It's not bad, just the thinking part. It's like he can't read and write. He doesn't know what day or time it is, but he can wash. He can get dressed.
{¶ 30} "The Court: So he doesn't — he doesn't know what day it is because he doesn't know his days, not because he's all mixed up?
{¶ 31} "[Father's mother]: Right. Right. He doesn't know Tuesday from Sunday.
{¶ 32} "* * *
{¶ 33} "The Court: Well, from what I am hearing it sounds like he's borderline as far as whether he needs a guardian. I think I'll hold off for now, but he'll have an attorney to represent him. * * *"
{¶ 34} Emphasizing the words "shall" and "appears" in R.C.2151.281(C), appellant insists that the information provided to the court at the shelter care hearing by appellant father's mother gave rise to the appearance that appellant father was mentally incompetent; therefore, mandating the appointment of a guardian ad litem. The court's failure to name a guardian then, or at any other time during the case, was prejudicial error, appellant maintains, because it prevented him from securing a proper defense or an adequate protection of his rights.
{¶ 35} The principal problem with appellant father's argument on this issue is that appellant father did not actually "appear" at the shelter care hearing. The result was that all of the information concerning appellant father's capacities came through his mother; and that information was, at best, ambiguous. Consequently, while we can observe that the information submitted, if true, was sufficient to prompt further inquiry, it would not have been prudent for the court to act on this information without more. Indeed, that is the course the court chose when it opted to forego appointment of a guardian, but did provide appellant father with counsel.
{¶ 36} While appellant father's contact with his counsel was minimal, he did meet with her on November 14, 2002, and he appeared before the court on the same day at a pretrial hearing. Neither appellant father's counsel nor the magistrate at the pretrial hearing placed on the record anything questioning appellant father's competency.
{¶ 37} Absent some indicia beyond an ambiguous secondhand report of appellant father's "mental problems," we cannot say that it was error for the trial court to fail to sua sponte appoint a guardian ad litem for him. Accordingly, appellant father's first assignment of error is not well taken.
 Withdrawal of Counsel
{¶ 38} In his second assignment of error, appellant father contends that the trial court erred by permitting his counsel to withdraw at the outset of the final dispositional hearing. Citing R.C. 2151.352
and In re M.L.R., 150 Ohio App.3d 39, 2002-Ohio-5958, appellant father insists that the court's granting of such an 11th hour withdrawal denied him his statutory right to be represented at all stages of the proceedings and that this denial operated to his prejudice.
{¶ 39} On the day of the final dispositional hearing in this matter, appellant father's counsel addressed the court:
{¶ 40} "* * * Your Honor, following the pretrial that was had on November 14th my client left the court with a list of my contact numbers, two phone numbers, a pager number and my address. I have received no contact with him at all in any way, shape or form. It came to my notice via attorney Clark that my client was locked up in Wood County Jail, and I did make contact with the jail to confirm that he was there. It was so confirmed.
{¶ 41} "I stopped on the 24th of January and made further contact to try to — in the attempt to ascertain his wishes, and I was informed by the Wood County Jail that he was no longer in jail. I asked where he was transferred to, and I was informed that he had not been transferred. I took that to mean that he was released. I was informed that he was transferred somewhere in Crawford County. I don't know where that is. Based on the fact that I have had no contact — the only time I had contact with my client prior to a year ago was at this pretrial in November. Based upon that I would not be able to represent my client's interests in any way, shape or form, and I ask the Court to withdraw.
{¶ 42} "The Court: So let's see if I understand you correctly. Literally you have had no contact.
{¶ 43} "[Counsel]: Other than at the pretrial.
{¶ 44} "The Court: At the pretrial.
{¶ 45} "[Counsel]: That is the only time I met my client."
{¶ 46} In re M.L.R., supra, holds that, in certain circumstances, it may be plain error for a juvenile court to permit a parent's counsel to withdraw on the day of a termination of parental rights dispositional hearing. We have followed In re M.L.R., In re Alyssa C.,153 Ohio App.3d 10, 2003-Ohio-2673, but we have also held that a party may by his or her action or inaction waive counsel. In re Savannah M., 6th Dist. App. No. L-03-1112, 2003-Ohio-5855. If a court determines that, after due diligence by counsel to obtain the client's cooperation or to communicate with the client, counsel is unable to ascertain the client's wishes with regard to the dispositional hearing, the court may properly permit counsel to withdraw. Id. at ¶ 45, Singer, J., concurring.
{¶ 47} In this matter, counsel recited numerous attempts to communicate with appellant father in order to ascertain his wishes; all to no avail. Moreover, following counsel's statement regarding her efforts, the court confirmed her account and found that appellant father had been properly notified of the hearing and its purpose. At that point, the court permitted counsel to withdraw, but only on condition that counsel be available during the day should appellant father appear. In such circumstances, we cannot say that the trial court erred in permitting counsel to withdraw. Accordingly, appellant father's second assignment of error is not well taken.
 Sufficiency of Evidence
{¶ 48} The potential issues put forth by counsel for appellant mother essentially challenge the sufficiency of the evidence supporting the determination that these children cannot be placed with either parent within a reasonable time.
{¶ 49} Ohio courts have long held that a parent who is a suitable person has a paramount right to the custody of his or her child. Clark v. Bayer (1877), 32 Ohio St. 299, 310 ; In re Perales (1977),52 Ohio St.2d 89, 97; In re Murray (1990), 52 Ohio St.3d 155, 157. For this reason, a court, "* * * may not award custody to [a] nonparent without first making a finding of parental unsuitability * * *." In re Perales, syllabus. Such a requirement still exists, In re Sara. (Dec 16, 1994), Lucas App. No. L-94-116, but has been statutorily defined.
{¶ 50} R.C. 2151.414 provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(B)(2), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1). The statute sets forth a list of 16 predicate findings, one of which must be established prior to a judicial conclusion that a child cannot or should not be placed with the child's parent. R.C. 2151.414(E); In re William S. (1996), 75 Ohio St.3d 95, syllabus. The statute also enumerates certain criteria for evaluating whether permanent custody with a children's services agency is in the child's best interests. R.C.2151.414(D)(1) through (4). All of the court's findings must be supported by clear and convincing evidence, R.C. 2151.414(B), and will not be overturned as against the manifest weight of the evidence if the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established. In re Forest S. (1995), 102 Ohio App.3d 338, 345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
{¶ 51} In this matter, the trial court found that the predicate findings in R.C. 2151.414(E)(1) and (4) had been proven. These provisions provide:"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
{¶ 52} "* * *
{¶ 53} " (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;"
{¶ 54} The record is clear that these children were removed from the home because of domestic violence exacerbated by both parents' questionable mental status. It is undisputed that appellant father exerted no effort whatsoever to amend his violent behavior.
{¶ 55} As regards appellant mother, although she completed domestic violence avoidance classes, she continued to surreptitiously live with appellant father. Moreover, just prior to the dispositional hearing, it was discovered that appellant mother had moved in with a man who was so violent and destructive that appellant mother's lease was not renewed. Consequently, the trial court's determination that the parties failed to remedy the climate of violence which caused the children to be removed from the home is supported by the evidence. Moreover, it was the unwillingness of appellant mother to escape such violence that caused her to lose her lease, thereby failing to provide an adequate permanent home for the children.
{¶ 56} Accordingly, we find both of appellant mother's counsel's potential issues without merit and wholly frivolous.
{¶ 57} Appellant mother's counsel's motion to withdraw is well-taken, and hereby, granted. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellants.
 JUDGMENT AFFIRMED.