DECISION AND JUDGMENT ENTRY
{¶ 1} Carol H., the biological mother of Amber G. and Josie G., appeals from a judgment issued by the Lucas County Common Pleas Court, Juvenile Division, granting permanent custody of her daughters to the Lucas County Children Services ("LCCS"). The question raised is whether a guardian ad litem should have been appointed for her during the dependency hearing for her two daughters because she appeared to be mentally incompetent. Because we conclude that appellant was not prejudiced by the trial court's failure to appoint a guardian ad litem for her, we affirm.
 Facts {¶ 2} LCCS filed a complaint in dependency and neglect and motion for shelter care hearing on September 11, 2002 for eight year-old Amber and six year-old Josie. Appellant and Kay E., the maternal grandmother of Amber and Josie, were present for the shelter care hearing. Because appellant did not have an attorney, the magistrate allowed her and LCCS to proffer evidence and the children's guardian ad litem to ask questions. After finding probable cause that the children should be in shelter care, the magistrate awarded temporary custody of Amber and Josie to LCCS. The magistrate also determined that an attorney should be appointed for appellant to serve as both legal counsel and guardian ad litem because of the complaint's allegation that appellant was low functioning as well as statements she and her mother made at the shelter care hearing. The trial judge's journal entry, however, appointed only an attorney for appellant.
 {¶ 3} Amber and Josie were placed with their maternal great aunts, and a case plan for eventual reunification was established for appellant and her children. The plan required that appellant 1) obtain a mental health diagnostic assessment and follow all recommendations and directions; 2) participate in a parenting assessment and follow all recommendations; and 3) obtain suitable and safe housing. At a dependency hearing on November 14, 2002, appellant was represented by counsel.[1] The complaint was amended, and appellant consented to a finding of dependency and neglect. The temporary custody of Amber and Josie was awarded to LCCS. A rights hearing was also held on December 4, 2002, after LCCS obtained service on Juan G., father of Amber and the putative father of Josie. Juan G. did not respond to the complaint and did not appear for the hearing.[2]
 {¶ 4} On June 20, 2003, LCCS filed a motion for permanent custody. The motion alleged that the girls could not or should not be returned to either parent within a reasonable time and that permanent custody was in their best interest. The motion averred that appellant was low functioning and had failed to demonstrate the ability to provide adequate parenting skills, to complete counseling to alleviate mental health issues, and to obtain stable housing. A permanent custody trial began on January 13, 2004 and resumed on March 29, 2004. After all the evidence had been submitted, the trial court awarded permanent custody of Amber and Josie to LCCS pursuant to R.C. 2151.414(E)(1), (2), (4), (12), (14), and (16) and found that permanent custody to LCCS was in the children's best interest under R.C. 2151.414(D). It is from this judgment that appellant appeals.
 Assignment of Error {¶ 5} "The trial court committed plain error by failing to appoint a guardian ad litem for appellant."
 {¶ 6} Appellant argues that the trial court erred when it failed to follow the mandates of R.C. 2151.281(C) and Juv.R. 4(B)(3) to appoint a guardian ad litem for her. Although the magistrate had appointed an attorney and guardian ad litem for appellant at the shelter care hearing, the trial court's order appointed her an attorney but did not include the term guardian ad litem.[3] Neither appellant nor her attorney questioned the failure of the trial court to affirm the magistrate's earlier guardian ad litem appointment. As they also never requested that a guardian ad litem be appointed for her, appellant has waived all but plain error.
 Plain Error Standard {¶ 7} The plain error doctrine originated in criminal law and is embodied in Crim.R. 52(B) which provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In re Etter
(1998), 134 Ohio App.3d 484, 492. This doctrine has been applied in civil cases as well. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121; see also, LeFort v. Century 21-Maitland RealtyCo. (1987), 32 Ohio St.3d 121, 124; In re Etter, supra. The plain error doctrine may be applied only in the extremely rare civil case "* * * where exceptional circumstances
 {¶ 8} require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, public confidence in, judicial proceedings." Id. "In an appropriate case, however, a reviewing court can find plain error when the trial court has failed to appoint a guardian ad litem and such failure results in prejudice to the party in need of a guardian." In re Holmes (Feb. 15, 2001), 8th Dist. No. 77785.
 Appointment of a Guardian ad Litem for an Incompetent Adult {¶ 9} R.C. 2151.281(C) and Juv.R. 4(B)(3) require that the court appoint a guardian ad litem to protect the interests of an incompetent adult in a juvenile proceeding where the parent appears to be mentally incompetent. In re Baby Girl Baxter
(1985), 17 Ohio St.3d 229, 232. R.C. 2151.281 provides in pertinent part:
 {¶ 10} "(C) In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent.
 {¶ 11} "* * *
 {¶ 12} "(E) A parent who is eighteen years of age or older and not mentally incompetent shall be deemed sui juris for the purpose of any proceeding relative to a child of the parent who is alleged or adjudicated to be an abused, neglected, or dependent child."
 {¶ 13} Juv.R. 4(B)(3) contains similar provisions and states:
 {¶ 14} "(B) Guardian ad litem; when appointed. — The court shall appoint a guardian ad litem to protect the interests of a child or incompetent adult in a juvenile court proceeding when:
 {¶ 15} "* * *
 {¶ 16} "(3) The parent is under eighteen years of age or appears to be mentally incompetent."
 {¶ 17} The first inquiry in determining whether the trial court complied with R.C. 2151.281(C) and Juv.R. 4(B)(3) is whether the parent appeared "mentally incompetent" during the trial court proceedings. In re K.P., 8th Dist. No. 82709, 2004-Ohio-1448, at ¶ 22 as amended nunc pro tunc by 2004-Ohio-1674; In re Anderson, 4th Dist. No. 02CA38, 2002-Ohio-7405, at ¶ 7; In re King-Bolen (Oct. 10, 2001), 9th Dist. Nos. 3196-M, 3231-M, 3200-M, 3201-M; In re McMunn (Jan. 24, 1990), 4th Dist. No. 88 CA 8. If a guardian ad litem should have been appointed, our next inquiry is whether there was any prejudice by the failure to appoint a guardian ad litem. In reK.P., supra at ¶ 24; In re Anderson, supra at ¶ 9.
 {¶ 18} Appellant argues that the only person who recognized her need for a guardian ad litem was the magistrate at the shelter care hearing. She contends that the trial court should have realized she needed a guardian ad litem when several witnesses described her as low functioning or somewhat retarded and very depressed. Although she did not have the psychiatric evaluation as recommended after her diagnostic assessment, appellant contends that her disability has been officially recognized by Social Security from which she receives SSI. LCCS responds that appellant's attorney stated on the record that appellant understood the nature of the proceedings and the agreement to stipulate to a finding of neglect and dependency and that appellant acknowledged she understood what was happening.
 {¶ 19} It is simply the appearance of mental incompetence and not an actual finding of such that triggers the requirement of the appointment of a guardian ad litem under R.C. 2151.281(C) and Juv.R. 4(B)(3). In re Holmes, supra. The fact that a person may have some mental impairment or may be mildly mentally retarded does not necessarily mean that the person is mentally incompetent. See In re King-Bolen, supra.; In re Luzader
(Dec. 3, 1997), 9th Dist. No. 18282; State v. Settles (Sept. 30, 1998), 3d Dist. No. 13-97-50, citing Penry v. Lynaugh
(1989), 492 U.S. 302, 106 L.Ed.2d 256, 109 S.Ct. 2934. In In reAnderson, supra, the court found that there was an appearance of mental incompetence where the record showed that the mother had been described as "lower functioning," had scored a 67 on the full scale IQ test, and was eligible for services through the Mental Retardation and Developmental Disabilities ("MRDD") Board. Similarly, the mother in In re Holmes, supra, fit the description of someone appearing to be mentally incompetent because she had scored in the "lower end of the borderline range of mental functioning," had been described as having limited intellectual abilities, and had had an extensive history with children services, having had her three oldest children previously removed from her care.
 {¶ 20} In In re Isaac M., 6th Dist. No. L-03-1097,2003-Ohio-6197, a mother informed the trial court at the shelter care hearing that her son, the father in a dependency proceeding, was developmentally handicapped, could not read or write, and had a history of mental problems. This court determined that while these representations were sufficient to prompt further inquiry concerning the appointment of a guardian ad litem for the appellant father, the trial court did not err in failing to appoint him a guardian ad litem because the appellant father did not actually "appear" at the shelter care hearing, his mother's statements were ambiguous, and neither the appellant father nor his court appointed attorney raised his competency in subsequent proceedings.
 {¶ 21} In appellant's case, paragraph eight of the complaint in dependency and neglect alleged that she was low functioning and received Social Security for this disorder. At the shelter care hearing, the magistrate asked about this statement and ultimately appointed an attorney/guardian ad litem after the following exchange:
 {¶ 22} "THE COURT: Thank you. Number eight, do we have any idea what that level refers to?
 {¶ 23} "[LCCS CASEWORKER]: From what I asked of both mother and grandmother that's all they said. They were never clear.
 {¶ 24} "THE COURT: They haven't been tested?
 {¶ 25} "[APPELLANT]: I have, yes.
 {¶ 26} "THE COURT: By whom?
 {¶ 27} "[APPELLANT]: By social security. What I get from social security is for my disability. Because for one I am not — I don't want to be — I am not real good at writing and my mom can tell you the rest.
 {¶ 28} "[GRANDMOTHER]: She is slow. She has a disability on slowness, and she does have anger or —
 {¶ 29} "* * *
 {¶ 30} "THE COURT: Well, the reason I was asking is because I can appoint a guardian for you if you are — if they felt that you were not able to make a decision or just an attorney. And I needed to know whether or not the level of function was such that you need a guardian in order to help you make decisions. That's what — that's what I am asking.
 {¶ 31} "[GRANDMOTHER]: She has — I am her payee, and that's why she was living with me. Because she needs somebody to help her."
 {¶ 32} In addition, the children's guardian ad litem stated in her report that appellant has mental delays and, although 28 years old, gives the impression of someone who is 13 or 14. The children's guardian ad litem further noted that appellant did not have much skill with handling finances or schedules and appeared to be very impulsive in making decisions. A case plan review also stated that appellant would not benefit from group therapy due to her functioning ability.
 {¶ 33} Finally, the testimony at the disposition hearing revealed that appellant was being treated for depression and appeared to have limited intelligence. The LCCS caseworker stated that appellant had previously been linked to MRDD services on several occasions prior to LCCS's involvement. The caseworker explained that MRDD was not made part of the case plan because appellant had failed to obtain a psychiatric evaluation which would have helped LCCS assess whether she needed those services.
 {¶ 34} We are troubled that although the magistrate at the shelter care hearing determined that an attorney/guardian ad litem should be appointed for appellant, nothing further happened. The record shows sufficient indication that appellant appeared to be mentally incompetent and that a guardian ad litem should have been appointed for her.
 {¶ 35} Even though the trial court erred by not appointing a guardian ad litem for appellant, this does not end the inquiry. "The failure to appoint a guardian ad litem does not constitute reversible error where no request for a guardian ad litem is made or the party cannot show prejudice." In re King-Bolen, supra. As previously stated, R.C. 2151.281(C) and Juv.R. 4(B)(3) require the appointment of a guardian ad litem to protect the interests of a parent in a juvenile proceeding who appears to be incompetent. Baxter, 17 Ohio St.3d at 232. "The statute allows the appointment to be made liberally, which does not infringe on a parent's due process rights but in fact works to ensure that the parent's rights are not compromised." In re Moore (Sept. 5, 2000), 12th Dist. No. CA99-09-153. A guardian ad litem is expected to provide an additional level of protection for an incompetent parent. Id. It is not the duty of the guardian ad litem, however, to prompt his or her ward to take advantage of available services. In re Anderson, supra. at ¶ 13. A guardian ad litem differs from a general guardian who has the general care and control of the ward. In re King-Bolen, supra.
 {¶ 36} In In re Alyssa Nicole C., 153 Ohio App.3d 10,2003-Ohio-2673, this court reversed as plain error the decision of the trial court to terminate parental rights because the trial court had improperly allowed the appellant's attorney to withdraw, leaving her unrepresented at the disposition hearing. Unlike Alyssa, the lack of the statutorily provided guardian ad litem did not leave appellant wholly unprotected. Throughout the proceedings, she was represented by appointed counsel. Under Juv.R. 4(C), appointed counsel may also serve as guardian ad litem as long as the roles do not conflict. The Supreme Court of Ohio has explained the difference between the roles as follows: "The duty of a lawyer to his client and the duty of a guardian ad litem to his ward are not always identical and, in fact, may conflict. The role of the guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest. The role of the attorney is to zealously represent his client within the bounds of the law." Baxter, 17 Ohio St.3d at 232. While we do not suggest that appellant's attorney here also was her guardian ad litem, appellant's rights were safeguarded because the attorney did advocate for reunification and also attacked LCCS's failure to link appellant with MRDD services.
 {¶ 37} Similarly, in In re Love (Dec. 21, 1990), 6th Dist. No. L-89-359, this court found that the appellant had not established she had been prejudiced by the 15 to 20 minute absence of her guardian ad litem during the testimony of the LCCS caseworker. The evidence in Love was overwhelming in support of LCCS's obtaining permanent custody, and we noted that the appellant had been adequately protected because she had been represented by counsel throughout the entire dispositional hearing.
 {¶ 38} Appellant has not pointed to anything in the record to show how she was prejudiced by the failure to have a guardian ad litem and also has not argued how having a guardian ad litem would have altered the outcome. She instead appears to argue that prejudice should be presumed. Several districts, however, have declined to presume prejudice in juvenile proceedings. See, Inre Anderson, supra at ¶ 9; In re McQuitty (May 5, 1986), 12 Dist. No. CA85-04-016. Instead, "an alleged error is not prejudicial for purposes of plain error review unless, `but for the error, the outcome of the trial clearly would have been otherwise.' State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus." In re King-Bolen, supra.
 {¶ 39} From the record, it is evident that appointment of a guardian ad litem would not have remedied appellant's failure to comply with her case plan and would not have improved her parenting abilities or enabled her to bond with her children. Both the program coordinator for the East Toledo Family Center and the LCCS parenting educator testified that appellant had problems appropriately interacting with Amber and Josie. They stated that appellant would often scream at or reprimand the children when she became stressed or frustrated with them. There was also testimony that appellant would socialize with other clients rather than interact with her girls. The parenting educator stated that appellant did not successfully complete the parenting program because she could not demonstrate that she would use the parenting skills taught on a consistent basis.
 {¶ 40} The LCCS caseworker testified that, in addition to not successfully completing the parenting program, appellant did not complete a psychiatric evaluation and did not obtain suitable housing as required by the case plan. She stated that appellant has had six to seven different addresses since 2002. The caseworker and two Toledo police officers testified that appellant has moved in and out of her current husband's trailer after domestic disputes, even after allegations her husband has threatened her to kill her.
 {¶ 41} Appellant's therapist testified that she anticipated maintaining appellant in therapy for depression for a least another year. Counseling undergone the year before had been unsuccessful because appellant had been homeless. The children's therapist testified that the girls expressed fear about returning to their mother and recommended that appellant's visitation with the girls be suspended because they often acted out after being with their mother. The children's therapist also stated she was working with Amber on boundary issues, sexual abuse issues, and behavioral issues.
 {¶ 42} Furthermore, the trial court found that additional R.C. 2151.414(E) factors, other than appellant's low functioning, existed. The trial court also concluded that Amber and Josie could not or should not be placed with appellant because she failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home; she had demonstrated a lack of commitment toward the children or had shown an unwillingness to provide an adequate permanent home for them; and she was unwilling to provide food, clothing, shelter, and other basic necessities for them or to prevent them from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. We, therefore, conclude that appellant has not shown that she was prejudiced by the lack of an appointed guardian ad litem.
 {¶ 43} Appellant's sole assignment of error is not well-taken. The judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Lanzinger, J., Singer, J. Concur.
[1] On November 8, 2002, the original appointed attorney was released from the case before making an appearance. Another attorney was immediately appointed as appellant's counsel and was present for the remaining proceedings.
[2] Juan G. was incarcerated in Texas for sexual assault to a minor and was not scheduled to be released until 2007. The court eventually appointed counsel for him; counsel attended the disposition hearings.
[3] It is unclear from the record whether this was an oversight by the trial court or a deliberate decision not to appoint appellant a guardian ad litem.